IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BABETTE B. BRIGGS, | ) |
| *Plaintiff*, | ) ) ) |
| v. | ) No. 19 C 3651 ) |
| ANDREW SAUL, Commissioner of Social Security, | ) Judge Virginia M. Kendall ) ) |
| *Defendant.* | ) ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Babette Briggs seeks review of the denial of her application for Social Security disability benefits. (Dkt. 1). She argues that the Administrative Law Judge ("ALJ") erred in determining her residual functional capacity, failed to properly consider her physician's opinions, and improperly evaluated her subjective symptoms. Before the Court is Briggs's Brief in Support of Reversing the Decision of the Commissioner of Social Security. (Dkt. 13). For the following reasons, the Court vacates the Commissioner's decision and remands the case to the Social Security Administration for further proceedings consistent with this opinion.

**BACKGROUND**

**I. The Relevant Framework**

"A person suffering from a disability that renders him unable to work may apply to the Social Security Administration for disability benefits. If a claimant's

1

application is denied initially and on reconsideration, he may request a hearing before an ALJ." *Krell v. Saul*, 931 F.3d 582, 584 (7th Cir. 2019).

> The ALJ is responsible for conducting a five-step sequential evaluation process. Step one is to determine whether the claimant is currently engaging in gainful employment. At steps two and three, the ALJ considers the severity of the disability. At step four, the ALJ determines what the claimant's disability leaves him able to do, i.e., his residual functional capacity, and whether given that capacity he may still perform his past work. And last, at step five, the ALJ assesses the claimant's residual functional capacity, age, education, and work experience to determine whether the claimant can perform work that is available in significant numbers in the national economy. 20 C.F.R. § 404.1520; *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

*Krell*, 931 F.3d at 584. The Administration bears the burden of proof at the final step, and to "assess a claimant's ability to continue working, the ALJ often relies on the testimony of vocational experts." *Id.*

## II. Medical Evidence

In January 2011, Briggs was admitted to the hospital through the emergency room after complaining of involuntary right arm movements. (R. 345). An EKG revealed normal sinus rhythm and sinus arrhythmia, a possible left atrial enlargement, and an old anterior septal wall infarction. (R. 345). A chest x-ray revealed mild cardiomegaly and pulmonary venous congestion. (R. 345). She was given a "low dose of Lorazepam" and the jerking movements resolved. (R. 345–46). She was discharged in stable condition. (R. 346). Her discharge diagnoses were myoclonus, hypertension, diabetes mellitus uncomplicated type 2 uncontrolled, and morbid obesity. (R. 345). Her discharge instructions noted no restrictions of activities. (R. 346).

May 2012 records from Briggs's treating primary care doctor, Dr. Lori Riley, showed that she had been treating Briggs since 2009, and Briggs was being treated for hypertension, type 2 diabetes mellitus, chronic pulmonary thrombosis, and COPD. (R. 639). Dr. Riley noted that Briggs "has shortness of breath on exertion and cannot participate in activities that challenge her respiratory system." (R. 639). She further noted that Briggs is "able to participate in walking activities at her own pace with rest breaks as needed." (R. 640). An August 2012 record from Dr. Riley showed that Briggs's hypertension symptoms had increased since her last visit. (R. 635). Dr. Riley noted that the fact that Briggs was out of medicine was an "exacerbating factor." (R. 635). Dr. Riley noted that Briggs was "very non compliant regarding tobacco use and medications, continued upper respiratory problems[,] poorly controlled BP and blood glucose as a result." (R. 637).

In September 2012, Briggs went to the emergency room complaining of pain in her neck radiating down her left arm with dizziness and nausea. (R. 389). She was diagnosed with left arm pain and a strain of her neck muscle. (R. 389). Briggs denied symptoms above her baseline and said that all she wanted was medication, which had worked when she had similar symptoms in the past. (R. 391). She described her pain as being associated with lifting a heavy object and twisting. (R. 291). She was given an EKG which showed sinus rhythm with premature atrial complexes, possible left atrial enlargement, and an anteroseptal infarct. (R. 402). Briggs was discharged after stating that medicine made her feel significantly better and that her pain had been resolved. (R. 394).

A few days later in September 2012, Briggs saw Dr. Riley with continued complaints of left shoulder pain. (R. 631). Dr. Riley wrote Briggs a letter excusing her from missed classes because of her "painful muscle spasm in left shoulder, taking medications that cause drowsiness, and unable to drive." (R. 630). The note stated that Briggs could return to school without restrictions but that she "may miss additional class due to fluctuations in her blood sugar and shortness of breath when having exacerbation of the COPD." (R. 630). On January 16, 2013, Briggs again saw Dr. Riley for a drainage in her ear and management of her hypertension and diabetes. (R. 624).

Briggs also saw Dr. Regina Hall-Ngorima in February 2012, November 2012, and August 2013. (R. 729–36, 739–42). The records from the earliest of these visits notes a diagnosis of anxiety disorder, and also a diagnosis of bipolar disorder in remission (R. 729). The records state that, in February 2012, Briggs had been out of school since November due to health problems. (R. 729). In November 2012, the records reflect that Briggs was doing customer service work from home and was back in school but may need to "take the spring off as it is very stressful." (R. 733). In August 2013, the records reflect that Briggs was dealing with "SOB which is limiting her ability to get around and makes her nervous about leaving the house." (R. 739). Briggs also noted that she would be going back to school in September, which she was looking forward to. (R. 739). Throughout these visits, Briggs's treatment plan reflected that she be treated with Zoloft, Risperdal, and Lorazepam. (R. 731, 735, 741).

4

**III.     Briggs's Application**

In early 2015, Briggs filed an application for disability insurance benefits. (R. 77; 189). She alleged that she became unable to work due to disability on January 1, 2013. (R. 189). The conditions she asserted as limiting her ability to work were diabetes, "HBP" (high blood pressure), COPD, anxiety, and paranoid schizophrenia. (R. 255). Her claim was denied initially and upon reconsideration, and thereafter she requested a hearing before an ALJ. (R. 89–100; 103–07; 125–26).

On June 5, 2018, an ALJ held a hearing. (R. 31). At the hearing, Briggs testified that she had been diagnosed with COPD in April 2010, which, along with her obesity, caused an inability to breathe and walk around. (R. 41). She stated that she could walk about six steps before stopping to catch her breath and could not stand for more than a minute due to weakness and shortness of breath, and that this went back to 2013. (R. 43). She also testified that she could not sit for more than 30 minutes. (R. 44). And she testified that there are stairs to get into her apartment, which posed a problem to her and caused her not to go out except to the doctor. (R. 43). In 2013, Briggs could not do household tasks and relied on her roommate to help her and to cook. (R. 45, 49). Upon examination by her attorney, Briggs testified that she had panic disorder and anxiety since 2001 which are triggered by crowded places and noise. (R. 46). Briggs also testified that she was leaving the house "much more" in early 2013 than she was able to at the time of the hearing. (R. 47). Though Briggs had a seasonal customer service job which she did from her home from 2008–2013, she stopped because she was too short of breath to take orders. (R. 50).

5

After the hearing, the ALJ issued a decision concluding that Briggs was not disabled as of her date last insured, which was March 31, 2013. (R. 13–22). *See Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012) (noting that "the claimant must establish that he was disabled before the expiration of his insured status"). The ALJ determined that Briggs had the following severe impairments: "diabetes mellitus type II; hypertension; obesity; bipolar disorder; and chronic obstructive pulmonary disease." (R. 15). The ALJ determined Briggs's residual functional capacity to be that she could:

> perform medium work as defined in 20 CFR 404.1567(c) except: the claimant can climb ramps and stairs occasionally, but never ladders, ropes, or scaffolds; the claimant can work in humidity and wetness occasionally, in dust occasionally, around odors, fumes and pulmonary irritants occasionally, and in extremes of heat and cold occasionally; the claimant is able to understand, remember, and carry out simple and routine tasks, involving only simple work-related decisions, and requiring the ability to adapt only to routine work place changes; the claimant is frequently able to interact with supervisors, coworkers, and the general public.

(R. 17–18). Per 20 C.F.R. § 404.1567(c), medium work also "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."

In determining Briggs's residual functional capacity, the ALJ considered medical opinions in the record, including Dr. Riley's. He gave Dr. Riley's May 2012 opinion that Briggs could not participate in activities that challenge her respiratory system or in contact sports partial weight, because it was "not expressed as a function-by-function analysis." (R. 20). He did, however, state that the exertional and environmental restrictions in the residual functional capacity accounted for the

6

limitations assessed by Dr. Riley. The ALJ gave little weight to Dr. Riley's September 2012 note excusing Briggs from her classes. (R. 20). In doing so, he noted that it contained "only temporary restrictions due to an acute impairment and does not purport to identify ongoing functional limitation." (R. 20).

The ALJ rejected the opinions from the State agency medical and psychological consultants. He noted that those opinions determined there was insufficient evidence of any severe physical or mental impairment prior to the date las insured. (R. 19–20, 81–83, 96–98). The ALJ, however, stated that the opinions "are given little weight, as the record does support some severe impairments." (R. 20).

Considering Briggs's age, education, work experience, and residual functional capacity, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Briggs could have performed. (R. 20–21). Specifically, the ALJ pointed to the fact that the vocational expert testified that Briggs could work as a Dining Room Attendant, Hand Packager, and Bagger. (R. 21).

Briggs appealed to the Administration's Appeals Council, which declined her request for review. (R. 1). She now seeks review by this Court, pursuant to 42 U.S.C. § 405(g).

## **LEGAL STANDARD**

Because the Appeals Council denied review, this Court evaluates the ALJ's decision as "the final word of the Commissioner of Social Security." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018). This Court must address whether substantial evidence supported the ALJ's decision. *See*

7

42 U.S.C. § 405(g); *Chavez v. Berryhill*, 895 F.3d 962, 967 (7th Cir. 2018). "The Supreme Court has explained that substantial evidence requires more than 'a mere scintilla' of proof and instead requires 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Chavez*, 895 F.3d at 967–68 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In doing so, this Court does not "reweigh the evidence or substitute our judgment for that of the agency." *Id.* at 968.

## DISCUSSION

Briggs argues that the Commissioner's decision must be reversed because: (1) the ALJ's residual functional capacity determination is not supported by substantial evidence; (2) the ALJ failed to properly consider Dr. Riley's opinions; and (3) the ALJ's assessment of Briggs's subjective symptoms was not supported by substantial evidence.

### I. Residual Functional Capacity Determination

A medium residual functional capacity includes "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). Briggs argues that the ALJ failed to point to evidence that would support his conclusion that Briggs could lift this amount. Briggs also asserts that a medium residual functional capacity includes "standing/walking about 6 hours in an 8-hour workday." (Dkt. 13 at 5). Medium work encompasses the light work requirements, which includes jobs that may require "a good deal of walking or standing." 20 C.F.R. § 404.1567(b), (c). Briggs argues that the ALJ failed to point

8

to evidence that would support his conclusion that Briggs could stand or walk to this degree. Briggs also argues that the ALJ failed to consider how her obesity, alone or combined with her other impairments, impacted her residual functional capacity and failed to consider the combined impact of all of her impairments, including her cardiac impairments and neck/shoulder pain.

While it is true, as the Commissioner points out, that Briggs carries the burden to show what her impairments are and what she remains able to do, *Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011), there must be substantial evidence to support an ALJ's conclusions. Here, the ALJ failed to build a "logical bridge" from the evidence to the conclusion that Briggs could perform medium work, including the particularly striking conclusion that she could lift up to 50 pounds, with frequent carrying of objects weighing 25 pounds. *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) (internal quotation marks omitted). The ALJ's statement that there was "nothing in the medical evidence" suggesting that Briggs was limited beyond the residual functional capacity was not supported by the evidence he cited. He observed that Dr. Riley's note stated that Briggs could return to school without restrictions (R. 19), but the record does not reflect what restrictions that might entail, and it is not necessarily reasonable to assume that school-related restrictions would be similar to those in the workplace. The ALJ also noted that Dr. Riley's notes from the January 2013 appointment were unremarkable and Briggs was in no acute distress and had a normal range of motion. (R. 19). Again, this does not necessarily mean that she was able to meet the requirements for medium work. Most notably, the ALJ gave partial

9

weight to Dr. Riley's May 2012 opinion that Briggs could not engage in activities that challenged her respiratory system and stated he had accounted for this in the residual functional capacity, however, it is not apparent how the weight he gave that opinion is bridged to his conclusion that Briggs could perform medium work, notably lifting up to 50 pounds. (AR. 20). Additionally, the ALJ determined that Briggs's alleged extreme limitations in sitting standing, and walking were not consistent with her medical history or the little work she had engaged in since her date of disability onset. (R. 19). Again, even assuming Briggs overstated her limitations, that does not mean that she could meet the requirements of medium work.

In sum, "the ALJ did not identify any medical evidence to substantiate [his] belief" that Briggs could meet the requirements for medium work. *Scott*, 647 F.3d at 740. This Court "therefore must conclude that the ALJ failed to build the requisite logical bridge between the evidence and [his] conclusion." *Id*. (internal quotation marks omitted). Though Briggs "bears the burden of producing evidence of her impairments," *id* at 741, she did so through her testimony that as far back as 2011 that she had shortness of breath upon doing any physical activity (R. 46) and through Dr. Riley's records. "If the ALJ found this evidence insufficient, it was [his] responsibility to recognize the need for additional medical evaluations." *Scott*, 647 F.3d at 741.

The Court also notes that, although the ALJ declined to find Briggs's neck and shoulder pain severe, he noted that she had been admitted to a hospital with neck and shoulder pain after lifting a heavy object. (R. 16). Yet the ALJ failed to address

10

this evidence when discussing Briggs's residual functional capacity, despite the fact that non-severe impairments should still be considered.[1] *See* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."). This further supports that the residual functional capacity determination was improperly made here.

The Court does not reweigh the evidence or make its own conclusion about how much Briggs can lift or whether she can do medium work. The Court, however, concludes that the ALJ failed to point to evidence that "a reasonable mind might accept as adequate to support" the conclusion that Briggs could perform medium work. *Chavez*, 895 F.3d at 967–68 (quoting *Perales*, 402 U.S. at 401)). The Court expresses no opinion on whether Briggs could, in fact, meet medium work requirements, but determines that, here, the ALJ and the Commissioner have not pointed to substantial evidence to support this conclusion. The Court therefore vacates the decision of the Commissioner and remands this case to the Administration.

---

[1] Briggs also points out that the ALJ failed to discuss her cardiac impairments, though she only briefly addresses what impact those impairments may have caused her or what limitations they might have imposed. That being said, "[w]ithout any discussion. . . , this court has no idea what the ALJ thought about this evidence." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012).

11

## II. Dr. Riley's Opinions

Though the error pertaining to the residual functional capacity is enough to require remand, the Court also addresses Briggs's other arguments. Briggs takes issue with the little weight and partial weight the ALJ gave Dr. Riley's September 2012 and May 2012 opinions, respectively. (R. 20).

Regarding the September 2012 opinion, the ALJ disregarded it because it contained "only temporary restrictions" and does not "identify ongoing functional limitation." (R. 20). This is incorrect, the note states that Briggs may miss additional class due to her conditions. The ALJ's decision to disregard the opinion on this ground was therefore incorrect. "An ALJ must evaluate all relevant evidence when determining an applicant's RFC. . . ." *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). And "[a]lthough an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, he may not ignore entire lines of contrary evidence." *Id.* at 592. Here, the ALJ did not reference the medical evidence that Briggs could need days off due to her condition or explain how this factored into her residual functional capacity. *Id.* at 592; *see also Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) ("An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability."). Additionally, the ALJ failed to consider relevant factors in deciding how much weight to give Dr. Riley's September 2012 opinion, or at least did not discuss them, which does not allow this Court to properly

12

assess whether the ALJ "appropriately chose not to give much weight to the treating physicians' opinions." *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014); 20 C.F.R. § 404.1527(c). And several of these factors suggest that Dr. Riley's opinion should have been given great weight, including that she was the treating physician for years, saw Briggs regularly, and repeatedly noted that Briggs faced limitations due to shortness of breath. (*See, e.g.*, R. 630, 639). *See also Campbell*, 627 F.3d at 308 ("And several of the factors support the conclusion that Dr. Powell's opinion should be given great weight: Dr. Powell treated Campbell for fifteen months; she treated him on a monthly basis; she is a psychiatrist; and her findings remained relatively consistent throughout the course of her treatment. Proper consideration of these factors may have caused the ALJ to accord greater weight to Dr. Powell's opinion.").

The Commissioner argues that any error in not discussing the entirety of the September 2012 note was harmless because it was "merely speculative of what may happen in the future," and it is clear it would not alter an ALJ's conclusion on remand (Dkt. 21 at 7). This argument is not persuasive. That Briggs's conditions may have caused her to miss commitments is relevant to her residual functional capacity. (*See, e.g.*, R. 64 (noting that missing more than one day of work per month would "preclude all work in the national economy")). Were this opinion to be more fully considered, it is not clear that the ALJ would reach the same result on remand.

As to the May 2012 opinion, the ALJ similarly did not explain why he was giving it only partial weight, other than to say it was "not expressed as a function-by-

13

function" analysis. (R. 20). Opposed to what the Commissioner argues, this was not a "reasoned explanation for the weight given." (Dkt. 21 at 8). *See, e.g., McDonald v. Berryhill*, No. 16 C 1809, 2017 WL 3720176, at *8 (N.D. Ill. Aug. 29, 2017) ("A treating physician is not required to make a function-by-function analysis. Thus, it was improper for the ALJ to use Dr. Williams's failure to provide a function-by-function analysis as a basis for discounting Dr. Williams's opinions." (citations omitted)). The ALJ's decision does not make clear that he weighed or even considered the relevant factors for assessing a medical opinion, and he did not minimally articulate them. 20 C.F.R. § 404.1527(c); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) ("If the ALJ discounts the physician's opinion after considering these factors, we must allow that decision to stand so long as the ALJ minimally articulated his reasons—a very deferential standard that we have, in fact, deemed lax." (internal quotation marks omitted)). Moreover, as noted above, it is not clear how, even if the ALJ properly gave this opinion partial weight, it supports his residual functional capacity determination. He merely stated he was accounting for this opinion without any explanation bridging it to his assessed limitations. (R. 20).

Again, the Court is not concluding that Dr. Riley's opinions are entitled to controlling weight or that they definitively support a finding of disability. But the failure of the ALJ to appropriately assess and account for Dr. Riley's opinions is an additional basis for a remand. *See Scrogham*, 765 F.3d at 698.

14

### III. Briggs's Subjective Symptoms

Finally, Briggs argues that the ALJ's evaluation of her subjective symptoms was not supported by substantial evidence. She argues that the ALJ applied the wrong standard by stating that her statements were "not entirely consistent" with the evidence in the record. Briggs also argues that the ALJ erred in discounting her statements due to her instances of non-compliance with treatment, her continued smoking, and failure to follow diet or activity recommendations. Briggs takes issue with the fact that the ALJ discredited her mental health testimony on the grounds that she did not receive extensive mental health treatment, as well as the ALJ's decision to discredit her reported physical symptoms as not consistent with her work activity. And Briggs argues that the ALJ failed to analyze the relevant regulatory factors to determine how much weight to give her statements.

Some of these arguments can be more easily dispensed with. While the ALJ noted that Briggs had not been compliant with medication, smoking cessation, and diet and activity recommendations, he did not suggest that her symptoms must be less severe as a result. In fact, he noted that this non-compliance may have caused her conditions to be uncontrolled, yet still concluded that these uncontrolled conditions would cause limitations that he would account for. (R. 19). In other words, the decision does not reflect that the ALJ penalized Briggs for her non-compliance.

Additionally, though Briggs may have wished for the ALJ to discuss the regulatory factors differently or in more detail, it cannot be said that he failed entirely

15

to address them; he discussed her work activity, the treatment she received, and her testimony about her limited daily activities. *See* 20 C.F.R. § 416.929; *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) ("Rice also lists items of evidence that the ALJ did not specifically mention in his decision. However, an ALJ need only minimally articulate his or her justification for rejecting or accepting specific evidence of a disability. . . the ALJ need not provide a written evaluation of every piece of evidence." (citations and internal quotation marks omitted)). Whether his conclusion was supportable is a different question and is addressed below.

The ALJ's assessment of whether Briggs's testimony was "entirely consistent" with the evidence, however, is cause for concern. 20 C.F.R. § 416.929 requires an assessment of whether the claimant's alleged limitations "can reasonably be accepted as consistent with" the evidence. The ALJ's use of the "entirely consistent" language calls into question whether he applied a more rigorous standard than is required under the regulations. *See, e.g., Minger v. Berryhill*, 307 F. Supp. 3d 865, 872 (N.D. Ill. 2018) ("Here, however, the ALJ's boilerplate indicates that he will be assessing the claimant's symptoms under a different standard—"entirely consistent"—than required in the regulations—"reasonably. . . accept[able] as consistent." As a result, the discussion following the boilerplate doesn't rescue the opinion, because the ALJ might be applying the wrong standard in that discussion."); *see also, e.g., Bancolita v. Berryhill*, 312 F. Supp. 3d 737, 744 (N.D. Ill. 2018).

In some cases, it may be clear from subsequent discussion in the ALJ's decision that he did not apply an incorrect legal standard. *See, e.g., Adrian Z. v. Berryhill*, No.

17-CV-4585, 2019 WL 3555397, at *3 (N.D. Ill. Aug. 2, 2019) ("The ALJ subsequently set forth Adrian's medical and work history, identifying with specificity where it contradicted Adrian's subjective characterizations of his symptoms. The Court accordingly rejects the conclusory arguments that the ALJ improperly required Adrian's subjective statements to be entirely consistent with the evidence or failed to consider them with specificity."). Here, however, the Court is not confident that the ALJ appropriately considered Briggs's subjective symptoms.

As to her mental health treatment, the ALJ noted that Briggs remained stable and had been busy with work, but disregarded the portion of the records where Briggs described school as "very stressful" and noted she may no longer be able to attend. (R. 733). Additionally, despite his observation that her mental health records were "unremarkable" and she was asymptomatic, he concluded that her mental health impairments could be expected to cause some limitations. He failed to explain how, despite his determination that the record lacked evidence, some limitations were consistent with the medical evidence, but not the ones Briggs articulated.

The same is true of Briggs's physical limitations. The ALJ describes these as unremarkable and documenting no abnormalities (R. 19), but he glosses over evidence that Briggs could be limited in her activities due to her shortness of breath, as described above. Additionally, though he references her alleged limitations being inconsistent with her work history, he does not explain how a limited, at-home work history was inconsistent with her alleged limitations. (*See* R. 50, 53–55 (describing jobs taking phone orders and working at her leisure from home)).

17

"On judicial review, a court will uphold the Commissioner's decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011); *see also Jeske*, 955 F.3d at 587. Here, however, the Court is not convinced that the ALJ applied the correct legal standard nor that he supported his conclusions of inconsistency. Although it is true that "[s]o long as an ALJ gives specific reasons supported by the record, we will not overturn his credibility determination unless it is patently wrong," *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015), here the Court cannot conclude that the ALJ gave specific reasons supported by the record for discounting Briggs's alleged limitations. Again, the Court is not suggesting that Briggs is necessarily as limited as she testified. Rather, additional explanation, along with evidence of application of the correct legal standard, was needed here. This, along with the other reasons articulated in this opinion, is grounds for a remand.

## CONCLUSION

For the foregoing reasons, the Court remands this case to the Administration for further proceedings consistent with this opinion. The Clerk of Court is directed to remand the case to the Social Security Administration forthwith.

Virginia M. Kendall
United States District Judge

Date: August 31, 2020

18